UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARISSA ASHLEY SANTIAGO,

    Plaintiff,

        v.                         No. 3:19-cv-00734(WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

     Defendant.

_____X

**<u>RULING ON PENDING MOTIONS</u>**

This is an administrative appeal following the denial of the plaintiff, Marissa Ashley

Santiago's, application for Supplemental Social Security Income ("SSI"). It is brought pursuant

to 42 U.S.C. §405(g).[2]

---

[1]      The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, *vote number* 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2]      Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court.  Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding his case for a rehearing. [Doc. #18]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. #23]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court grants Plaintiff's motion to reverse/remand and denies the Commissioner's motion to affirm.

## **LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims.  The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the

claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920.[3] The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859

---

[3] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

I.    **BACKGROUND**

a.  **Facts**

Plaintiff filed her SSI application on August 3, 2015, alleging an onset of disability as of February 1, 2011.  Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On July 5, 2018, a hearing was held before Administrative Law Judge Eskunder Boyd ("the ALJ"). Plaintiff, represented by counsel, and a vocational expert testified at the hearing. On September 20, 2018 the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On April 8, 2019, the Appeals Council denied review of the ALJ's unfavorable decision. This action followed.

Plaintiff was twenty-seven years old on the date of her SSI application. She has a high school education and three years of college, can communicate in English and has no past relevant work experience. Plaintiff's complete medical history is set forth in the Statement of Facts filed by the parties. [Doc. ##18-1; 23-2]. The Court adopts these statements and incorporates them by reference herein.

b.  **The ALJ's Decision**

The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 3, 2015, the application date. (R. 12). At Step Two, the ALJ found Plaintiff has the following severe impairments: status post closed bimalleolar fracture, status post open reduction and internal fixation of right ankle, asthma, migraine headaches, schizoaffective disorder, bipolar disorder, opiate dependence disorder (in remission). (R. 12). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 12-14). Next, the ALJ determined Plaintiff retains the following residual functional capacity[4]:

> to perform light work as defined in 20 C.F.R. §416.967(b) except she must never climb ladders, ropes, or scaffolds; she may occasionally climb stairs or ramps, balance, stoop, and crouch; she must never kneel or crawl; no work in exposure to cold or wetness; can perform simple, routine, repetitive tasks and can sustain concentration, persistence and pace for 2-hour segments; occasional interaction with co-workers; brief and superficial interaction with the public; work with little or no changes in duties or routines; no work requiring independent judgment making (no setting duties/schedules for others, no responsibility for the safety of others).

(R. 14).

At Step Four, the ALJ found Plaintiff had no past relevant work. (R. 17). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 17-18). Specifically, the ALJ found that Plaintiff can perform the positions of Garment Sorter, Cleaner and Finish Inspector. (R. 17-18). Accordingly, the ALJ determined that Plaintiff was not disabled since August 3, 2015, the date the application was filed. [5] (R. 18).

---

[4]    Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations.  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

[5] SSI benefits are not payable for any period prior to the month after the application is filed. See 42 U.S.C. §1382(c)(7); 20 C.F.R. §§416.335, 416.501.

## II.    DISCUSSION

Plaintiff raises several arguments in support of her Motion to Reverse, which the Court will address in turn.

Plaintiff argues that the Commissioner erred in substituting his own medical judgment for that of any physician. [Doc. #18-2 at 8-20]. She contends that the ALJ erred by interpreting the raw medical data and objective diagnostic and clinical findings to formulate Ms. Santiago's function-by-function physical RFC without any medical authority. She further argues that the ALJ erred in failing to provide good reasons to discount the favorable opinion of the treating psychiatrist Dr. Michael Kligfeld and in failing to develop the record by obtaining the treatment records from psychiatrist Dr. Naimet Syed.

### a.    Adequacy of the RFC

An ALJ has the responsibility to determine a claimant's RFC based on all the evidence of record. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). The RFC is an assessment of "the most [the disability claimant] can still do despite [his or her] limitations." 20 C.F.R. §404.1545(a)(1), 416.945(a)(1). Although "[t]he RFC determination is reserved for the commissioner...an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record.... Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." *Walker v. Astrue*, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010)(quoting *Lewis v. Comm'r of Soc. Sec.,* No. 6:00CV1225(GLS), 2005 WL 1899, at *3 (N.D.N.Y. Aug. 2, 2005)(internal citations omitted)). Nevertheless, plaintiff has the burden to demonstrate functional limitations that would preclude any substantial gainful activity. *See* 20 C.F.R. §§§404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); 42 U.S.C.

6

§423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

Pursuant to 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2), a treating source's opinion will usually be given more weight than a non-treating source. If it is determined that a treating source's opinion on the nature and severity of a plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is given controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. Id. If the treating source's opinion is not given controlling weight, the ALJ considers the following factors in weighing the opinion: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source. See 20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). "While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Pilarski v. Comm'r of Soc. Sec., No. 13-CV-6385-FPG, 2014 WL 4923994, at *2 (W.D.N.Y. Sept. 30, 2014)(quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)).

Here, the ALJ found that plaintiff had the RFC [6]:

---

[6] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations.  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

to perform light work as defined in 20 C.F.R. §416.967(b) except she must never climb ladders, ropes, or scaffolds; she may occasionally climb stairs or ramps, balance, stoop, and crouch; she must never kneel or crawl; no work in exposure to cold or wetness; can perform simple, routine, repetitive tasks and can sustain concentration, persistence and pace for 2-hour segments; occasional interaction with co-workers; brief and superficial interaction with the public; work with little or no changes in duties or routines; no work requiring independent judgment making (no setting duties/schedules for others, no responsibility for the safety of others).

(R. 14).

The regulations dictate the physical exertion requirements of light work:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567(b).

For the reasons that follow, the Court finds that the ALJ did not fulfill his duty to develop the record and that remand is warranted to obtain medical source statements from primary care provider APRN Egbunike, neurologist Dr. Micalizzi, and psychiatrist Dr. Syed and treatment records from Drs. Kligfeld and Syed.

"It is the rule in our circuit that the ALJ, unlike the judge in a trial, must [him]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1997) (internal quotation marks omitted); *see Moreau v. Berryhill*, No. 3:17-CV-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately." (internal quotation marks omitted) ). "Whether the ALJ has satisfied this obligation or not must be addressed as a threshold issue." *Moreau*, 2018 WL 1316197, at *4.

"Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id.* (quoting *Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)).

"The expert opinions of a treating physician are of particular importance to a disability determination." *Id.* at *5. "What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is [the treating physician's] opportunity to develop an informed opinion as to the physical status of the patient." *Hallet v. Astrue*, No. 3:11-CV-1181 (VLB), 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) (citing *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ). "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or ... by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996).

This is not the case where plaintiff suffers relatively little physical or mental health impairments such that the ALJ may render a common sense judgment about Plaintiff's functional capacity. The ALJ acknowledged as much by designating as "severe" plaintiff's status post closed bimalleolar fracture, status post open reduction and internal fixation of right ankle, asthma, migraine headaches, schizoaffective disorder, bipolar disorder, opiate dependence disorder (in remission). (R. 12).

The administrative record in this case contains numerous detailed treatment records, a physical and psychiatric consultative examination and two medical opinions from a treating psychiatrist Dr. Kligfeld, and the opinions of the State agency medical and psychiatric consultants that relate the medical evidence to what plaintiff can and cannot do functionally.

With regard to Ms. Santiago's physical impairments, Plaintiff accurately points out that there are no medical source statements from her treating internist APRN Veronica Egbunike, or treating neurologist Dr. Philip Micalizzi "describing on a function-by-function basis what Ms. Santiago can and cannot do, despite their years of treatment of Ms. Santiago." [Doc. 18-2 at 8]. Plaintiff was treated by APRN Egbunike from approximately June 2012 through December 2017 from, and was treated by neurologist Dr. Micalizzi from approximately September 2012 through March 2018. [Ex. 16F, 19F, 30F; and 10F, 21F, 25F, 27F]. Notably, the ALJ did not rely on a treating clinician or doctor's opinion, and assessed "little weight" to the opinion of the State agency medical consultants, regarding plaintiff's functional limitations in making his RFC determination, as conceded by defendant. [Doc. #23-1 at 10-16, R. 16]. Our Circuit Court holds that "[i]n the absence of supporting expert medical opinion, the ALJ should not engage in his own evaluations of the medical findings." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)(quoting Filocomo v. Chater, 944 F. Supp. 165, 170 (E.D.N.Y. 1996)). "Because the expert opinions of a treating physician as to the existence of a disability are binding on the factfinder, it is not sufficient for the ALJ simply to secure raw data from the treating physician." *Hallet*, 2012 WL 4371241, at *6.

With regard to Plaintiff's mental impairments, the ALJ assessed "little weight" to the opinion of treating psychiatrist Dr. Kligfeld and the opinions of the State agency psychological consultants. (R. 16). Plaintiff was treated by psychiatrist Dr. Michael Kligfeld from approximately February 2014 through June 2016, and the record contains two Medical Source Statements from Dr. Kligfeld. (R. 305-09; 791-95). The ALJ assessed Dr. Kligfeld's opinions "little weight" stating, among other things, that his opinions do "not acknowledge any diagnosis for substance abuse, despite the overwhelming evidence in the record of treatment for opiate

10

dependence." (R. 16). The ALJ also found that "the lack of psychological testing erodes at the evidentiary underpinning for this opinion." (R. 16). Importantly, Dr. Kligfeld's treatment records are not part of the administrative record and the Court is unable to test the reliability of his opinion by reviewing his contemporaneous treatment notes.

Sometime after 2016, Plaintiff's care was transferred to psychiatrist Dr. Naimet Syed. The administrative record contains no treatment records from Dr. Syed and no Medical Source Statement. Efforts were made by the ALJ to request the doctor's records but no subpoena issued. The Court finds this problematic as Plaintiff's mental health impairments are significant and, as the ALJ points out, the administrative record contains a long history of psychiatric treatment, hospitalizations, IOP programs and treatment for substance abuse. Here, there are no treatment records or opinions from Plaintiff's treating psychiatrist Dr. Syed after 2016, or her treating clinicians for the disability period under consideration addressing the functional limitations that flow from her mental impairments to support the ALJ's RFC findings.

The principle that an ALJ should not substitute his lay opinion for the medical opinion of treating providers is especially profound in a case involving mental impairments.

> In the absence of a medical opinion to support the ALJ's finding as to Balsamo's ability to perform sedentary work, it is well-settled that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *McBrayer v. Secretary of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983) (internal quotation marks and citations omitted); *see also Filocomo v. Chater,* 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

*Balsamo v. Chater,* 142 F.3d at 81. This case warrants a remand for further development of the record. "The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Morales v. Apfel*, 225

F.3d 310, 319 (3d Cir. 2000); *Petruck v. Berryhill*, No. 3:18CV715 (AWT), 2019 WL 2171265, at *2 (D. Conn. May 20, 2019) (citations omitted) ("This duty to develop the record "is heightened in cases where the claimant is mentally impaired", as is the case here.").

"When the record contains medical findings merely diagnosing the claimant's impairments without relating that diagnosis to functional capabilities, 'the general rule is that the Commissioner may not make the connection himself.'" *Kain v. Colvin*, No. 14-CV-650S, 2017 WL 2059806, at *3 (W.D.N.Y. May 15, 2017)(quoting *Englert v. Colvin*, 15-CV-564-FPG, 2016 WL 3745854, at *4 (W.D.N.Y. July 8, 2016)).

"Because the ALJ failed to cite to any medical opinion to support his RFC findings, the Court is unable to determine if the ALJ improperly selected separate findings from different sources, without relying on any specific medical opinion." *Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007).

> Where, as here, the medical findings and reports merely diagnose the claimant's impairments without relating the diagnoses to specific physical, mental, and other work-related capacities, the administrative law judge's "determination of residual functional capacity without a medical advisor's assessment of those capacities is not supported by substantial evidence." Given Plaintiff's multiple physical and mental impairments, this is not a case where the medical evidence shows "relatively little physical impairment" such that the ALJ "can render a common sense judgment about functional capacity."

*Palascak v. Colvin*, No. 1:11-CV-0592 MAT, 2014 WL 1920510, at *9 (W.D.N.Y. May 14, 2014); *see also Kain*, 2017 WL 2059806, at *3 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.")(quoting *Englert*, 2016 WL 3745854, at *4 )); *House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013)("[A]lthough the RFC determination is an issue reserved for the commissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical

findings and as a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.")(internal citation and quotation marks omitted).

Because the ALJ did not give controlling weight to psychiatrist Dr. Kligfeld's opinion, dismissed the opinions from of the State agency medical and psychological consultants and, there are no opinions from her primary care clinician APRN Egbunike and treating neurologist Dr. Michael Micalizzi, the record lacks any  medical opinion regarding Ms. Santiago's physical and mental ability to complete the activities for light work with limitations as set forth in the RFC. (R. 14). *Martin v. Berryhill*, No. 16-CV-6184-FPG, 2017 WL 1313837, at *3 (W.D.N.Y. Apr. 10, 2017)("Because the ALJ rejected Dr. Finkbeiner's opinion, the record lacks any medical opinion as to Martin's physical ability to engage in work at any exertional level on a regular and continuous basis in an ordinary work setting. There is no medical opinion regarding her capacity to sit, stand, walk, or lift, which are necessary activities for sedentary work. *See* 20 C.F.R. §§404.1567(a), 416.967(a).").

While the Commissioner is free to decide that the opinions of acceptable medical sources and other sources are entitled to no weight or little weight, those decisions should be thoroughly explained. *Sears v. Astrue*, Civil Action No. 2:11-CV-138, 2012 WL 1758843, at *3 (D. Vt. May 15, 2012). Indeed, when an ALJ rejects all physician opinion evidence, an evidentiary deficit exists. "[E]ven though the Commissioner is empowered to make the RFC determination, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' the general rule is that the Commissioner 'may not make the connection himself.'" *Martin*, 2017 WL 1313837, at *3 (quoting *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)).

"In light of the ALJ's affirmative duty to develop the administrative record, an ALJ cannot reject [or ignore] a treating physician's [opinion] without first attempting to fill any clear gaps in the administrative record." *Burgess v. Astrue,* 537 F.3d 117, 129 (2d Cir. 2008)(quoting *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999)); *see Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998)("Even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte.")).*

> The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996); *see also Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by counsel." (quoting *Echevarria v. Secretary of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982))).

*Richardson v. Barnhart,* 443 F. Supp. 2d 411, 423 (W.D.N.Y. 2006).

Because there is no medical source opinion or functional assessment supporting the ALJ's finding that Ms. Santiago can perform light work with limitations, the Court concludes that the RFC determination is without substantial support in the record and a remand for further administrative proceedings is appropriate. *See House*, 2013 WL 422058, at *4 (citing *Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand.)).

On remand, the ALJ should develop the record as necessary to obtain opinions as to plaintiff's functional limitations from treating and/or examining sources, obtain treatment records from psychiatrists Drs. Kligfeld and Syed, and obtain an opinion from APRN Egbunike, neurologist Dr. Micalizzi, psychiatrist Dr. Syed and other mental health

providers addressing the functional limitations that flow from Plaintiff's physical and mental impairments to support the ALJ's RFC findings.

The Commissioner on remand should thoroughly explain his findings in accordance with the regulations. *See Martin*, 2017 WL 1313837, at *4 ("There were many avenues available to the ALJ to fill the gap in the record....")(citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016)). The Commissioner on remand, "should employ whichever of these methods are appropriate to fully develop the record as to [Ms. Santiago's] RFC." *Id.*

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. Because the Court has found the ALJ erred in failing to develop the record, it need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling. On remand, the Commissioner will address the other claims of error not discussed herein.

The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand appropriate to permit the ALJ to develop the record accordingly.

The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Accordingly, the Court finds that the ALJ did not err in assessing plaintiff's physical RFC and that it is supported by substantial evidence of record.

**III.     CONCLUSION**

For the reasons stated, Plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #18]** is **GRANTED**. Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #23]** is **DENIED**.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to enter judgment in favor of the Plaintiff and close this case.

SO ORDERED, this 20th day of April 2020, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge